UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID DILLON, JR.,  )
    Plaintiff,  )
                                 )
           v.  )
                           )    CIVIL ACTION NO. 12-10713-GAO
                              )
THOMAS DICKHAUT, ET AL.,  )
    Defendants.  )

## MEMORANDUM AND ORDER

O'TOOLE , D.J.

### BACKGROUND

On April 19, 2012, Plaintiff David Dillon, Jr. ("Dillon"), now a prisoner in custody at MCI Norfolk, filed a self-prepared civil rights Complaint against: (1) Thomas Dickhaut, former Superintendent of the Souza Baranowski Correctional Center ("SBCC"); (2) Anthony Mendonsa, Superintendent of the SBCC; (3) Osvaldo Vidal, Deputy Superintendent of Operations; and

(4) Bruce Gelb, former Director of Security at SBCC. Dillon alleges that these Defendants deliberately failed to protect him from harm and place him in a safe environment.[1]

Specifically, Dillon asserts that his Eighth Amendment rights were violated by the Defendants implementation of a "forced double-bunking" policy. He further claims that there was a "known practice" at SBCC that encouraged cellmates to fight with each other. Specifically, he contends that on March 3, 2009, while in segregation, he was placed in a cell with another inmate (Robert Beal), and was forced to fight him "gladiator-style." He then was made to stay in the cell after this fight. The next day, March 4, 2009, Dillon was forcibly moved

---

[1] Dillon's filing is dated April 12, 2012. The Court received his filing on April 19, 2012.

to a new cell with another inmate (Noel Vaillencourt ("Vaillencourt")).  Vaillencourt also attacked him and began to fight with him.  Both Dillon and Vaillencourt were gassed by guards in order to stop the fight.  Dillon was taken out of the cell for medical care, but he contends he did not receive proper attention to his injuries.  Thereafter, Dillon was returned to the same cell.  Both Dillon and inmate Vaillencourt remained in handcuffs and were told by guards that they would be uncuffed when they "decided to get along."  Thereafter, while still in handcuffs, Dillon and Vaillencourt began "head butting" each other while guards stood outside the cell watching and laughing as this "head butting" was continuing.  Eventually, Dillon and Vaillencourt were uncuffed and then an actual fight broke out between them.  As a result, Dillon sustained injuries, including a broken nose, a black eye, and cuts.  Thereafter, Dillon again was placed in the same cell with Vaillencourt, but this time they were put in leg irons and waist chains.  Another "head butting" fight ensued.  Dillon claims that this went on for weeks without any intervention by prison guards, until one day a "rookie" came by the cell, saw what was happening, and "called it in."  It was at that point that Dillon and Vaillencourt were finally separated.

Dillon seeks monetary damages.  Along with the Complaint, Dillon filed a Motion for Appointment of Counsel.  He failed, however, to pay the filing fee for this action, or to filed a Motion for Leave to Proceed *in forma pauperis.*

On April 25, 2012, this Court issued a Procedural Order (Docket No. 4) directing Dillon either to pay the $350.00 filing fee within 21 days or seek a waiver thereof by filing an application to proceed without prepayment of filing fees, accompanied by his certified prison account statement.

On May 7, 2012, Dillon filed a Motion to Compel the Treasurer of MCI Norfolk to

provide his certified prison account statement (Docket No. 5).  He also filed letters indicating that he had made requests for this account statement, and that the Treasurer would be sending the statement to the Court.

On May 11, 2012, Dillon filed a Motion for Leave to Proceed *in forma pauperis.*  On May 14, 2012, this Court received Dillon's certified prison account statement from the Treasurer.

## DISCUSSION

I.  The Motion for Leave to Proceed *In Forma Pauperis*

Upon review of Dillon's financial disclosures and prison account statement, this Court finds that he lacks sufficient funds to pay the filing fee for this civil action.  Accordingly, his Motion for Leave to Proceed *in forma pauperis* (Docket No. 7) is ALLOWED.

Because Dillon is a prisoner, he is obligated to make payments toward the $350.00 filing fee, pursuant to the Prison Litigation Reform Act.  See 28 U.S.C. § 1915 (the *in forma pauperis* statute).  Accordingly, it is hereby Ordered that:

> A.  Dillon is assessed  an initial partial filing fee of $5.00, pursuant to 28 U.S.C. § 1915(b)(1)(A);[2]
>
> B.  The remainder of the fee $345.00 is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

This assessment is made apart from any other assessments made in other civil actions

---

[2]The initial partial assessment represents 20% of the average monthly balance in Dillon's prison account for the six-month period preceding the filing of the Complaint, as calculated by the Treasurer's Office.  The initial partial assessment is made regardless of whether or not Dillon currently has sufficient funds in his prison account to pay.  The *in forma pauperis* statute requires the initial partial filing fee be assessed, but collection to occur "when funds exist."  28 U.S.C.
§ 1915(b)(1).

3

filed by Dillon; however, for purposes of clarification for crediting any funds received from Dillon, this Court intends that any funds received from his prison account first be applied to any prior Order of a Court assessing a filing fee pursuant to 28 U.S.C. § 1915.

II.     The Motion to Compel Production by the Treasurer of MCI Norfolk

In light of the receipt by the Treasurer of Dillon's prison account statement, Dillon's motion seeking to compel production of the statement is moot. Accordingly, the Motion to Compel the Treasurer of MCI Norfolk to provide his certified prison account statement (Docket No. 5) is DENIED.

III.    The Complaint is Subject to Screening

Because Dillon is a prisoner, his Complaint is subject to the provisions of the Prison Litigation Reform Act. The Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996), enacted several provisions which grant this Court the authority to screen and dismiss prisoner complaints. See 28 U.S.C. § 1915 (proceedings *in forma pauperis*);[3] 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).[4]

---

[3]Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §1915(e)(2). *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless. Id.; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

[4]Section 1915A authorizes courts to review prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if it lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from

4

In reviewing this action, this Court liberally construes Dillon's Complaint because he is proceeding *pro se.* See Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000).

At this time, the Court will permit this action to proceed and will authorize summonses to issue because Dillon has alleged that he suffered an injury directly as a result of Defendants' implementation of a double-bunking policy which they knew threatened his safety and because Dillon alleges that the Defendants failed to protect him from this harm.[5]  Further, although Dillon's claims against supervisory Defendants may be subject to dismissal to the extent they are based on the theory of *respondeat superior*,[6] this Court will permit this action to proceed and

---

such relief.  28 U.S.C. § 1915A.

[5]See Cote v. Murphy, 152 Fed. Appx. 6, 2005 WL 2708221, at *1 (1st Cir. 2005) (unpublished decision holding that while double-bunking of sex offenders "is not a per se violation of due process," citing Bell v. Wolfish, 441 U.S. 520, 541-43 (1979, "in rare cases [it] might amount to an unlawful practice when combined with other adverse conditions").  See also Rector v. Department of Corrections, 387 Fed. Appx. 5, 2010 WL 2814321 (1st Cir. Jul. 20, 2010) (upholding decision in Cote and affirming district court's dismissal of civil committee's suit because he had not alleged that he had been harmed or was in danger of being harmed because of double-bunking).

[6]*Respondeat superior* is not a viable theory of liability under 42 U.S.C. § 1983.  "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983.  Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)).  "[In civil rights actions],'supervisors are not automatically liable for the misconduct of those under their command.  A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'" Velez-Rivera, 437 F.3d at 156 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).  See Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984) (liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights).  See also Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (discussing test for liability of supervisory officials).

5

will entertain briefing on this issue if raised at a later time.

IV.     The Motion for Appointment of Counsel

Dillon seeks appointment of *pro bono* counsel on the grounds that he is not literate and is in segregation and therefore has little opportunity to prosecute this action *pro se*. Under 28 U.S.C. § 1915, a "court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The United States Court of Appeals for the First Circuit provides the following set of factors to consider when determining whether to appoint counsel to an indigent litigant under § 1915: "[1] the indigent's ability to conduct whatever factual investigation is necessary to support his or her claim; [2] the complexity of the factual and legal issues involved; and [3] the capability of the indigent litigant to present the case." Cookish v. Cunningham, 787 F.2d 1, 3 (1st Cir. 1986) (*per curiam*); see Bemis v. Kelley, 857 F.2d 14, 16 (1st Cir. 1988). Ultimately, to be eligible for this assistance under 28 U.S.C. § 1915, Dillon "must demonstrate that he [is] indigent and that exceptional circumstances [are] present such that a denial of counsel [is] likely to result in fundamental unfairness impinging on his due process rights." DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991). This Court considers the total situation, including the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself. Id.

At this juncture, the Court credits that Dillon is unable to afford to retain counsel to represent him, that he unskilled in the law, and that he may have a difficult time prosecuting this action *pro se*. Nevertheless, the merits of this action are questionable and thus the expenditure of scarce *pro bono* resources is not justifiable. First, even under a liberal reading of the Complaint,

6

Dillon's claims that the Defendants had a "known practice" (of encouraging or condoning fights between cellmates) is based on general allegations and legal conclusions and is not supported by underlying facts from which knowledge and deliberate indifference reasonably could be imputed to them.

As an additional matter subjecting this action to dismissal for failure to state a claim upon which relief may be granted, it appears that Dillon's claims for constitutional violations occurring in 2009 are barred by the statute of limitations for civil rights cases.

The statute of limitations for claims under the Civil Rights Act in the District of Massachusetts is three years.[7] Here, Dillon's alleged injuries from fights were incurred on March 3rd or 4th of 2009. He did not file this Complaint until April 12, 2012 -- more than three years later.[8] Even assuming that, as Dillon contends, the situation went on for "weeks" after the March 4, 2009 incident with Vaillencourt, it does not appear that Dillon filed this suit in a timely fashion. While the matter may turn on days or even weeks, the United States Court of Appeals for the First Circuit has held that "a complaint which states a claim that appears to have expired

---

[7]Nieves v. McSweeney, 241 F.3d 46, 52-53 (1st Cir. 2001) (§ 1983); Johnson v. Rodriguez, 943 F.2d 104, 107 (1st Cir. 1991) (§ 1981); Govan v. Trustees of Boston Univ., 66 F. Supp. 2d 74, 80 (D. Mass. 1999) (§ 1981, 1985). Cf. Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96 (1st Cir. 2004) (§§ 1981, 1983, and 1985 borrow the forum state's statute of limitations for personal injury claims); Mass. Gen. Laws ch. 260, § 2A (three-year statute of limitations for personal injury claims); Owens v. Okure, 488 U.S. 235 (1989). The accrual date for a § 1983 action is the date when the plaintiff knew or should have known that he was harmed. See, e.g., Villanueva-Méndez v. Nieves-Vázquez, 440 F.3d 11, 15 (1st Cir. 2006) (citing Chardón v. Fernández, 454 U.S. 6, 8 (1981)).

[8]For purposes of this Memorandum and Order, this Court applies the prisoner mailbox rule and assumes the Complaint was mailed by Dillon on that date. See Casanova v. Dubois, 304 F. 3d 75 (1st Cir. 2002) (so long as prisoner complies with prison's procedures for sending legal mail, the filing date for purposes of assessing compliance with the statute of limitations will be the date on which prisoner commits the mail to the custody of prison authorities).

under the applicable statute of limitations may be dismissed as frivolous" under the *in forma pauperis* statute. Johnson v. Rodriguez, 943 F.2d 104, 107 (1st Cir. 1991), cert. denied, 502 U.S. 1063 (1992) (quoting Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991), cert. denied, 502 U.S. 1063 (1992)).[9]

In light of the above, this Court preliminarily finds this action to be subject to dismissal.[10] Thus, there are no exceptional circumstances justifying appointment of *pro bono* counsel.

Accordingly, Dillon's Motion for Appointment of Counsel (Docket No. 2) is DENIED.

V. Issuance of Summonses; Service By the United States Marshal

In view of the above, the Clerk is directed to issue summonses and the United States Marshal Service is directed to effect service, as set forth below.

CONCLUSION

Based on the foregoing, it is hereby ORDERED that:

1. Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 7) is ALLOWED and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2. Plaintiff's Motion to Compel the Treasurer of MCI Norfolk to provide his certified prison account statement (Docket No. 5) is DENIED;

3. Plaintiff's Motion for Appointment of Counsel (Docket No. 2 ) is DENIED;

---

[9]Although the statute of limitations is an affirmative defense, and Fed. R. Civ. P. 8(a) does not require a plaintiff to plead facts to avoid potential affirmative defenses, a Complaint can be dismissed for failure to state a claim if the allegations therein show that relief is barred by the relevant statute of limitations. See Jones v. Bock, 549 U.S. 199, 215 (2007) ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim....").

[10]This Court will not dismiss this action *sua sponte*; the issues discussed herein may be raised by the parties at a later time.

4. The Clerk shall issue summonses with respect to each Defendant; and

5. The Clerk shall send the summonses, a copy of the Complaint, and this Memorandum and Order to the Plaintiff, who must thereafter serve the Defendants in accordance with Federal Rule of Civil Procedure 4(m). The Plaintiff may elect to have service made by the United States Marshal Service. If directed by the Plaintiff to do so, the United States Marshal shall serve the summonses, Complaint, and this Memorandum and Order upon the Defendants in the manner directed by the Plaintiff, with all costs of service to be advanced by the United States Marshal Service. Notwithstanding Fed. R. Civ. P. 4(m) and Local Rule 4.1, the Plaintiff shall have 120 days from the date of this Order to complete service.

SO ORDERED.

/s/ George A. O'Toole, Jr.
GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE

DATED: May 17, 2012