UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10713-GAO

DAVID DILLON
Plaintiff,

v.

THOMAS DICKHAUT, et al
Defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION
May 24, 2013

O'TOOLE, D.J.

The magistrate judge to whom the matter was referred has filed a Report and
Recommendation recommending that the defendants' motion to dismiss the action be granted.
No timely objection has been filed.

After review, I concur in the magistrate judge's analysis and ADOPT her
recommendation. The motion to dismiss is GRANTED and the action is DISMISSED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID DILLON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 12-10713-GAO |
| v. | ) | |
| | ) | |
| THOMAS DICKHAUT, et al. | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS
[Docket No. 18]

April 18, 2013

Boal, M.J.

Pro se plaintiff David Dillon ("Dillon" or "Plaintiff") has sued Defendants Thomas

Dickhaut (former Superintendent of Souza Baranowski Correctional Center ("SBCC")), Osvaldo

Vidal (former Deputy Superintendent of Security; current Deputy Superintendent of Operations),

Anthony Mendonsa (Superintendent of Classification at SBCC), and Bruce Gelb (former

Director of Security and Deputy of Operations at SBCC) in their individual and official

capacities for violations of Dillon's Eighth Amendment rights pursuant to 42 U.S.C. § 1983.

(Docket No.1). Defendants Dickhaut, Vidal and Gelb[1] have moved to dismiss Dillon's

---

[1] Defendant Anthony Mendonsa has not yet been served. Docket No. 15. Pursuant to the
District Court's Memorandum and Order dated May 17, 2012, Plaintiff was to serve defendants
no later than September 14, 2012. Docket No. 10 at 9. In any event, as set forth below, the
Court also finds that the Complaint fails to state a claim against all Defendants, including
Mendonsa. Accordingly, the Court recommends that the claims against defendant Mendonsa
also be dismissed.

1

complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure. (Docket No. 18). For the reasons discussed below, this Court recommends that the

District Court grant the Defendants' motion to dismiss.

I.      PROCEDURAL HISTORY

Dillon filed his Complaint on April 12, 2012.[2] Docket No. 1. On May 17, 2012, the

District Court issued a Memorandum and Order allowing the Plaintiff's motion to proceed in

forma pauperis. Docket No. 10. The District Court also found that it appeared that Dillon's

claims are barred by the statute of limitations and denied his motion for appointment of counsel.

Id. at 7-8.

On August 31, 2012, Defendants filed a motion to dismiss the Complaint. Docket No.

18. Plaintiff filed an opposition on October 3, 2012. Docket No. 25. On October 15, 2012,

Plaintiff filed an amended opposition to Defendants' motion to dismiss. Docket No. 26.

II.     FACTS[3]

At all times relevant to the Complaint, Dillon was an inmate at Souza Baranowski

Correctional Center ("SBCC") in Shirley, Massachusetts. He asserts that while at SBCC his

---

[2] Dillon's Complaint was received by the Clerk's Office on April 19, 2012. The Complaint is dated April 12, 2012. For purposes of a decision rendered earlier in this case, the District Court applied the prisoner mailbox rule and assumed that the Complaint was mailed on April 12, 2012. See Docket No. 10 at 7 n. 8 (citing Casanova v. Dubois, 304 F.3d 75 (1st Cir. 2002) (so long as prisoner complies with prison's procedures for sending legal mail, the filing date for purposes of assessing compliance with the statute of limitations will be the date on which prisoner commits the mail to the custody of prison authorities)). This Court makes the same assumption.

[3] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the Complaint and drawing all reasonable inferences in the Plaintiff's favor. See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

Eighth Amendment rights were violated by Defendants' implementation of a "forced double bunking" policy. Complaint, ¶ 12. Dillon further claims that there was a "known practice" at SBCC that encouraged cellmates to fight with each other. Complaint, ¶¶ 12-13. Specifically, Dillon claims that on March 3, 2009, while in segregation, he was placed in a cell with another inmate (Robert Beal) and Dillon and Beal got into a physical altercation. Complaint, ¶ 6. He was then made to stay in the cell after the fight. Id.

The next day, on March 4, 2009, Dillon was forcibly moved to a new cell with another inmate (Noel Vaillencourt). Complaint, ¶ 7. Vaillencourt also attacked him and began to fight with him. Complaint, ¶ 8. Both Dillon and Vaillencourt were gassed by guards in order to stop the fight. Id. Dillon was taken out of the cell for medical care, but he contends that he did not receive proper attention to his injuries. Id. Thereafter, Dillon was returned to the same cell. Id. Both Dillon and Vaillencourt remained in handcuffs and were told by guards that they would be uncuffed when they "decided to get along." Complaint, ¶ 9. Thereafter, while still in handcuffs, Dillon and Vaillencourt began "head butting" each other while guards stood outside the cell watching and laughing. Id. Eventually, Dillon and Vaillencourt were uncuffed and they began to fight again. Complaint, ¶ 10. After approximately five minutes, guards entered the cell and broke up the fight. Id. Dillon sustained injuries, including a broken nose, a black eye and cuts, as a result of the fight. Id.

Thereafter, Dillon was again placed in the same cell with Vaillencourt, but this time they were placed in leg irons and waist chains. Complaint, ¶ 11. Another "head butting" fight ensued. Id. Dillon alleges that this went on "for weeks" without any intervention by prison guards, until one day a "rookie" came by the cell, saw what was happening, and "called it in."

3

Id. It was at that point that Dillon and Vaillencourt were finally separated. Id.

III.    ANALYSIS

Defendants argue that Dillon's complaint is barred by the applicable statute of limitations. Docket No. 19 at 6-7. They also argue that Dillon's Complaint fails to state a Section 1983 claim against the Defendants because he has not alleged sufficient facts to show either the Defendants' personal involvement or supervisory liability. Id. at 3-6. The Court finds that because the precise date upon which Dillon exhausted his administrative remedies is unknown, his claims should not be dismissed as time barred. Nevertheless, the Court finds that Dillon has failed to state a claim for Section 1983 violations against the Defendants.

A.      Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). Pro se pleadings are to be liberally construed. Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1991). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. Iqbal,

4

556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48

(1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-

unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'")

(citations omitted).  Accordingly, a complaint does not state a claim for relief where the well-

pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct.

Iqbal, 556 U.S. at 679.

     B.    Documents Outside Of The Complaint

     In considering the merits of a motion to dismiss, the Court may look only to the facts

alleged in the pleadings, documents attached as exhibits or incorporated by reference in the

complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court

of Mass., 83 F.Supp.2d 204, 208 (D. Mass. 2000) (Harrington, J.), aff'd, 248 F.3d 1127 (1st Cir.

2000).  Consideration of other materials is generally forbidden unless the motion is properly

converted into one for summary judgment. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

     Here, Dillon attached several documents to his opposition to Defendants' motion to

dismiss: (1) a copy of his inmate grievance form, (2) a copy of a letter from Massachusetts

Correctional Legal Services to Dickhaut regarding double bunking concerns; and (3) a copy of

the Rules and Regulations Governing All Employees of the Massachusetts Department of

Correction. Docket No. 25-1. The Court may take judicial notice of the filing of prisoner

grievances and the responses to those grievances by prison officials (but not of the allegations

contained in those documents). See Flentall v. Lange, No. 1:10-cv-161, 2011 WL 4526742, at

*3 (W.D. Mich. Aug. 8, 2011); Simpson v. Greenwood, No. 06-C-612-C, 2007 WL 5445538, at

*1 (W.D. Wis. Apr. 6, 2007). Accordingly, the Court will consider Dillon's inmate grievance form only to the extent that it shows that Dillon filed a grievance, the date of the grievance, the Department of Correction's response to the grievance and the date of the response. The Court will not consider the remaining documents for purposes of this motion to dismiss.

      C.     42 U.S.C. § 1983

Section 1983 is a vehicle through which individuals may sue certain persons acting under the color of state law for deprivation of federally assured rights. Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008). Specifically, Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

42 U.S.C. § 1983. Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-4 (1989).

"A claim under Section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). The Defendants do not dispute that they were acting under color of state law. However, Defendants contend that Dillon has failed to state a claim that they deprived him of any constitutional rights.

      1.     Statute Of Limitations

A motion to dismiss on statute of limitations grounds may be granted when the complaint

6

"leaves no doubt" that the plaintiff's claim is barred by the statute of limitations. LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998) (internal citations omitted). "The facts establishing the defense must be clear 'on the face of the plaintiff's pleadings.'" Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001) (quotation omitted).

In determining the applicable statute of limitations for a Section 1983 claim, the Court looks to the statute of limitations period for personal injury cases in the forum state. Cao v. Commonwealth of Puerto Rico, 525 F.3d 112, 115 (1st Cir. 2008); Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). In Massachusetts, the statute of limitations for personal injury claims is three years. M.G.L. c. 260, § 2A. Accordingly, the applicable statute of limitations in this case is three years. Nieves, 241 F.3d at 51. The three-year statute of limitations accrues "when the aggrieved person 'knows, or has reason to know, of the injury on which the action is based.'" Cao, 525 F.3d at 115 (citations omitted).

Dillon argues that his claims are not time-barred because he was not aware of the three-year statute of limitations and he was not aware that he had a legal claim against the Defendants. Docket No. 25 at 6. However, ignorance of the statute of limitations or the fact that one may have a legal claim does not toll the statute of limitations. The statute of limitations starts running when the plaintiff discovers sufficient facts about the injury and its cause to prompt a reasonable person to inquire and seek advice preliminary to deciding whether there is a basis for filing a legal claim against prison officials. See Cao, 525 F.3d at 115; Skwira v. United States, 344 F.3d 64, 78 (1st Cir. 2003). Here, Dillon was aware of his injuries and their cause on the date of the incidents: March 3 and 4, 2009. Accordingly, the statute of limitations began running on that date.

Dillon also argues that the statute of limitations was tolled during the time that he was exhausting his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Docket No. 26 at 2. He alleges that he filed a grievance on March 6, 2009 and the grievance coordinator's final decision was made on April 6, 2009. Id. The grievance coordinator recommended that Dillon's grievance be referred to Internal Affairs. Id. Dillon does not state what action, if any, was taken by Internal Affairs or the date of any such action.

The PLRA, 42 U.S.C. § 1997e(a), requires that prisoners exhaust all administrative remedies available to them before bringing suit. Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion requires pursuing all available administrative appeals. See White v. McGinnis, 131 F.3d 593, 595 (6th Cir. 1997); Lasalle-Pitre v. Mercado-Cuevas, 839 F. Supp. 2d 471, 474 (D.P.R. 2012). Accordingly, courts have held that a plaintiff is entitled to equitable tolling of the statute of limitations for time spent exhausting administrative remedies. Harris v. Hegmann, 198 F.3d 153, 158 (5th Cir. 1999); White v. Lemoine, No. 11-CV-1422, 2011 WL 6034454, at *1 (W.D. La. Nov. 4, 2011); Caesar v. Pennsylvania Dep't of Corrections, No. 1:10-CV-00202, 2011 WL 4916365, at *2 (M.D. Pa. Sept. 26, 2011).

Here, the Court is not presented with sufficient facts to determine when Dillon's administrative remedies were finally exhausted. The grievance form shows that Dillon filed a grievance on March 6, 2009 and the grievance coordinator's final decision was made on April 6, 2009. Docket No. 25-1 at 1. Therefore, the statute of limitations was tolled at least for one month. It is not clear whether an Internal Affairs Investigation is part of the exhaustion process.[4]

---

[4] Nothing in the Department of Correction regulations concerning inmate grievances, 103 C.M.R. 491.00 et seq., mentions internal affairs investigations.

If it were, it is possible that the statute of limitations was tolled for additional periods of time, provided that Internal Affairs in fact investigated the incident. The Court, however, does not have that information and such information cannot be gleaned from the Complaint or the grievance form. While it may very well be that Dillon's claims are in fact time barred, because the precise date when Plaintiff had finally exhausted administrative remedies is not undisputed, Dillon's claim should not be dismissed as time barred at this point in the proceedings.[5]

2.     Claim Against Defendants In Their Official Capacities

Dillon has sued the Defendants in both their individual and official capacities. Complaint ¶¶ 2-5. However, a state official acting in his official capacity cannot be sued for damages in a Section 1983 action. Wang v. New Hampshire Board of Registration in Medicine, 55 F.3d 698, 700 (1st Cir. 1995); Rafferty v. Cranston Pub. Sch. Comm., 315 F.3d 21, 28 (1st Cir. 2002). Therefore, Dillon cannot pursue money damages against Defendants in their official capacity for his Section 1983 claims and those claims should be dismissed.[6]

3.     Claim Against Defendants In Their Individual Capacities

a.     Eighth Amendment Claims

A prison official's deliberate indifference to a substantial risk of harm to an inmate

---

[5] In any event, the Court finds that Dillon has failed to state a claim against the Defendants. In the event that the District Court disagrees with that determination, this Court recommends that the District Court convert the motion to dismiss to a motion for summary judgment on the statute of limitations issue, order the Defendants to submit affidavits setting forth the facts related to exhaustion, and return the motion for summary judgment to this Court for a report and recommendation.

[6] To the extent that Dillon intended to sue the Department of Corrections for money damages, such claims must also be dismissed, as the Department of Corrections is not a "person" within the meaning of 42 U.S.C. § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989); Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984).

violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828 (1994). Although not
every injury a prisoner suffers at the hands of another prisoner is actionable, prison officials must
take reasonable measures to guarantee an inmate's safety from attacks by other inmates. Id. at
833-4.

   To establish an Eighth Amendment claim for a failure to protect, a plaintiff must show
that: (1) objectively, the deprivation alleged is sufficiently serious, i.e. that the conditions of
incarceration pose a substantial risk of serious harm; and (2) subjectively, that the defendant was
deliberately indifferent to the plaintiff's health or safety. Id. at 834.

   A prison official may be liable for acting with deliberate indifference only if the official
"knows of and disregards an excessive risk to inmate health and safety; the official must be both
aware of facts from which the inference could be drawn that a substantial risk of serious harm
exists, and he must also draw the inference." Id. at 837. Therefore, in order to establish
deliberate indifference, a plaintiff must show: "(1) the defendant knew of (2) a substantial risk
(3) of serious harm and (4) disregarded that risk." Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d
60, 64 (1st Cir. 2002).

   b.   Individual Liability

   Construing Dillon's pleadings liberally, the Court reads his complaint as asserting a
claim against Defendants both as individuals, and, because of the nature of each Defendant's
office, in their supervisory capacities. "Because vicarious liability is inapplicable to ... § 1983
suits, a plaintiff must plead that each Government-official defendant, through the official's own
individual actions, have violated the Constitution." Iqbal, 556 U.S. at 676. "Absent vicarious
liability, each Government official, his or her title notwithstanding, is only liable for his or her

own misconduct." Id. at 677.

Dillon has not alleged any facts showing Defendants' personal involvement in the conduct at issue in the Complaint. Dillon's only allegations regarding Defendants in their individual capacity are that: (1) the Defendants implemented "a known practice and policy within SBCC" of double-bunking (Complaint, ¶12); and (2) the Defendants' actions "encouraged . . . and created a culture within the prison that allowed the Plaintiff to be assaulted and seriously injured." (Complaint, ¶ 13). However, a policy of double-bunking does not violate the Eighth Amendment per se. Cote v. Murphy, 152 Fed. Appx. 6, 7 (1st Cir. 2005) (unpublished decision citing Bell v. Wolfish, 441 U.S. 520, 541-43 (1979)). Other than his allegation regarding the implementation of a double-bunking policy, the Complaint never mentions the Defendants in connection with the alleged misconduct. Instead, Dillon alleges that the prison guards placed Dillon and Vaillencourt in the same cell and failed to stop their fighting.[7] Complaint, ¶¶ 8-11. Dillon does not allege that any of the Defendants even knew of the fights. Although Dillon alleges that the Defendants encouraged a culture within the prison that allowed Plaintiff to be assaulted and seriously injured, see Complaint, ¶ 13, that conclusory allegation is not sufficient to state claim. See, e.g., Guzman v. Cranston, 812 F.2d 24, 25-26 (1st Cir. 1987) (conclusory allegation that the harm resulted from defendant's "intentional or reckless negligent failure to investigate" is insufficient to state a claim without any alleged facts tying the defendant personally to the harm suffered). Dillon's Complaint is practically silent as to the Defendants and he has not alleged any facts showing that the Defendants knew of and disregarded a risk to

---

[7] He also alleges that a Sgt. Raymond came to his cell and told him that the "move team" was coming to force him into J-3 SMU, cell #31. Complaint, ¶ 7.

his health or safety.  Accordingly, the Court finds that Dillon has not stated a plausible claim against the Defendants in their individual capacities.

      c.    <u>Supervisory Liability</u>

Absent participation in the challenged conduct, a supervisor may be held liable for constitutional violations only if "(1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was affirmative[ly] link[ed] to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence [of the supervisor] amounting to deliberate indifference." <u>Pineda v. Toomey</u>, 533 F.3d 50, 54 (1st Cir. 2008) (citation omitted).  The plaintiff must show causation linking the supervisor's conduct to the subordinate's violative act or omission. <u>Maldonado-Denis v. Castillo-Rodriquez</u>, 23 F.3d 576, 582 (1st Cir. 1994) (citations omitted). Causation may be satisfied if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct.  <u>Id.</u> (citations omitted).  Causation may also be satisfied if there is a long history of widespread abuse sufficient to alert a supervisor to ongoing violations and the supervisor fails to take corrective action. <u>Id.</u> (citations omitted).

Here, Dillon has not alleged any facts affirmatively linking the Defendants to the alleged actions of the guards in failing to break up the fights between Dillon and other inmates.  There are no allegations that the Defendants knew about the guards' alleged misconduct.  Although Plaintiff appears to allege that allowing double-bunked inmates to fight each other was a "known practice" at SBCC (Complaint, ¶ 12), that allegation is conclusory and nonspecific.  Absent any factual basis from which deliberate indifference by the Defendants could be inferred, Dillon has failed to state a plausible claim for supervisory liability.

IV.    RECOMMENDATION

For the foregoing reasons, I recommend that the District Court grant Defendants' Dickhaut, Vidal and Gelb's motion to dismiss the Complaint. I also recommend that the District Court dismiss the Complaint against Mendonsa because he has not been timely served and, even if he had been timely served, the Complaint also fails to state a claim against him.

IV.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital,199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

13